NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 220052-U

NOS. 4-22-0052, 4-22-0053, 4-22-0054 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 20, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|      Petitioner-Appellee, | ) | Nos. 21JA272 |
|      v.    (No. 4-22-0052) | ) |    21JA273 |
| Jennifer W., | ) |    21JA274 |
|      Respondent-Appellant). | ) | |
| | ) | |
| *In re* A.W., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
|      Petitioner-Appellee, | ) | |
|      v.    (No. 4-22-0053) | ) | |
| Jennifer W., | ) | |
|      Respondent-Appellant). | ) | |
| | ) | |
| *In re* Ar. W., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
|      Petitioner-Appellee, | ) | |
|      v.    (No. 4-22-0054) | ) | Honorable |
| Jennifer W., | ) | Mark E. Gilles, |
|      Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The trial court's dispositional order finding respondent unfit was not against the manifest weight of the evidence.

¶ 2    Respondent, Jennifer W., is the mother of L.W. (born April 2014), A.W. (born

May 2008), and Ar. W. (born March 2017). (The father of all three minors is Daniel W., who is not involved in this appeal.)

¶ 3        In October 2021, the Department of Children and Family Services (DCFS) filed petitions for adjudication of neglect, alleging that L.W., A.W., and Ar. W. were neglected by reason of their being minors under the age of 18 whose environment was injurious to their welfare due to (1) respondent's mental health problems and (2) domestic violence between respondent and Daniel. 705 ILCS 405/2-3(1)(b) (West 2020). In November 2021, respondent stipulated to the allegations in count I of the petition (relating to her mental health).

¶ 4        In January 2022, the trial court conducted a dispositional hearing, adjudicated the minors wards of the court, and placed custody of the children with the guardianship administrator of DCFS. The court found respondent unfit for reasons other than financial circumstances alone to care for the minors.

¶ 5        Respondent appeals, arguing the trial court erred by finding her unfit at the dispositional hearing because, by the time of the dispositional hearing, (1) her mental health issues had stabilized, (2) she had recalibrated her medications, (3) she was fully engaged in therapy, and (4) she was cooperating with DCFS. We disagree and affirm.

¶ 6                                I. BACKGROUND

¶ 7                        A. The Petitions and the Shelter Care Hearing

¶ 8        In October 2021, DCFS filed three petitions for adjudication of neglect, alleging L.W., A.W., and Ar. W. were neglected by reason of being minors under the age of 18 whose environment was injurious to their welfare. *Id.* (The three petitions were identical and are hereinafter referred to as "the petition." We also note that each petition was filed under a separate case number and the cases have been consolidated for this appeal.) The petition alleged

the following incidents: (1) in October 2021, respondent overdosed on medication because she wanted to harm herself and had been talking to people who were not there; (2) on September 30, 2021, respondent attempted to jump from a bridge but was rescued by a passerby and taken to the hospital; (3) on July 30, 2021, Daniel W. grabbed respondent and pushed her, and Daniel W. was subsequently convicted of battery; and (4) on August 13, 2021, respondent obtained an order of protection against Daniel W., which named respondent and three children as protected parties.

¶ 9    The same day the petition was filed in October 2021, the trial court conducted a shelter care hearing. Respondent was not present because she did not have notice. Daniel was present and did not object to shelter care. Later in October 2021, the court conducted a "rehearing" at which respondent was present and respondent "agree[d] to continue shelter care of the minors." That same day, Daniel filed an "Answer to Juvenile Petition," which stipulated that the allegations in count I of the petition could be proven.

¶ 10    B. Respondent's Answer to the Petition and the Adjudicatory Hearing

¶ 11    In November 2021, respondent filed her "Answer to Juvenile Petition" in which she stipulated to count I of the petition. That count specifically alleged that on October 9, 2021, police officers were dispatched to respondent's residence for a report of a female having "mental issues." When the police arrived, they found respondent in the back of an ambulance. She admitted she had taken "a bunch of medications *** because she wanted to harm herself." The three minors were present. A.W. told the police that respondent had been speaking to people who were not present and had taken medication from the cabinet. A.W. had contacted Daniel to tell him what was happening. A police officer determined that respondent had an order of protection against Daniel that protected respondent and the three minors.

¶ 12    That same day, the court entered an "Arraignment Order" continuing the case to

- 3 -

January 2022, for "Entry of Adjudication" and a dispositional hearing. The court also entered a "Temporary Task Order," which stated that respondent "may perform" certain tasks, and that her failure to perform them prior to disposition "may not be used against [her.]" Respondent's identified tasks were to undergo "[c]ounseling," "[d]omestic violence class," and obtain a "mental health assessment and any follow up [treatment] as directed."

¶ 13        In January 2022, the parties convened for the adjudicatory hearing. No evidence was presented, and the parties waived proffer of a factual basis. The trial court found that "based upon the pleadings, the answers, and *** the stipulations," the allegations in the petition were proven and the minors were neglected.

¶ 14                        C. The Dispositional Hearing

¶ 15                        1. *The Dispositional Report*

¶ 16        That same day, the trial court conducted the dispositional hearing. The court received a dispositional report prepared by Megan Couri of DCFS. The report stated that respondent was currently diagnosed with posttraumatic stress disorder (PTSD) and bipolar disorder and that she has a history of major depressive mood disorder. Respondent reported taking medications for these disorders and that her medications had recently changed. Respondent also reported that "her reality is mixed up with her understanding of what is actually happening." Respondent admitted that she tried to overdose on her psychiatric medication and was hospitalized but also denied that she was suicidal. Respondent reported that she has been engaged in counseling for two years, that she attends twice weekly, and that her counselor is aware of DCFS's involvement.

¶ 17        Couri also wrote in her report that respondent "openly admits she needs services *** to manage[ ] her triggers and acknowledges this is a barrier to parenting." Couri additionally

noted that respondent (1) was "eager to address her needs and cooperate with DCFS recommendations and the court's orders" and (2) "presented open and honest about the benefits to medical and clinical interventions."

¶ 18      The dispositional report also provided additional details about the incidents described in the petition. In particular, the report documented an incident that occurred in July 2021 in which Daniel grabbed respondent by the hair and shoved her. A.W. witnessed the event, and the other children were inside the home at the time. The report also documented that respondent told DCFS on at least two occasions that there was a history of domestic abuse in the home.

¶ 19      2. *The Evidence Presented*

¶ 20      At the hearing, Couri testified that the "Integrated Assessments" (also called "social histories") had been completed over the phone the week prior but Couri had not yet received a report back from the "integrated assessor." Regarding respondent's mental health, Couri testified that respondent had "sign[ed] releases" and Couri was in the process of gathering information "from providers." Couri also testified that respondent had moved in with a new boyfriend who had a history of domestic violence with other paramours. Regarding the service plan, Couri recommended that respondent (1) complete drug testing twice monthly, (2) take medications as prescribed by a psychiatrist, and (3) complete parenting classes and counseling. Couri testified that further services might be recommended by respondent's service providers.

¶ 21      Couri testified on cross-examination that none of respondent's services identified in the temporary task order had started yet because Couri "need[ed] to see the recommendations from the Integrated Assessment."

¶ 22      When asked whether respondent was safe to be around the children, Couri

testified that she could not say because she did not have "a good collective basis yet from our assessment." Couri stated she had spoken with respondent about supervised contact with the children "due to her hospitalization and psychiatric concerns."

¶ 23     The parties did not present any further evidence.

¶ 24          3. *The Arguments of the Parties and the Trial Court's Ruling*

¶ 25     The State argued that respondent should "be found unable at this point." Respondent's counsel replied, "Your Honor, we don't necessarily have a problem with [respondent] being found unable, but I do believe that unsupervised visits would be appropriate for [her] at this time."

¶ 26     When issuing its oral ruling, the trial court found respondent was "unfit based upon the contents of the petitions as well as the information that's been provided today and included in the Dispositional Report." The court also found that the services recommended by DCFS were "reasonable and appropriate" and told respondent that the court intended to "make sure we're giving you the right services that you need."

¶ 27     The trial court entered a written order adjudicating the minors neglected, making them wards of the Court, and ordering custody be placed with the guardianship administrator of DCFS. In its written order, the court found respondent was unfit for reasons other than financial circumstances alone to care for, protect, train, and discipline the minors and that "placement with her is contrary to the health, safety and best interests of the minors."

¶ 28     The court incorporated into its dispositional order a "supplemental task order" that ordered respondent to perform certain tasks "in order to correct the conditions that led to the adjudication and/or removal of the minors." The supplemental order required respondent, among other things, to (1) "undergo, comply with, and successfully complete" parenting class and

counseling, (2) submit to random drug testing twice per month, and (3) "take medications as prescribed by a psychiatrist and *** comply with psychiatric care."

¶ 29        This appeal followed.

¶ 30                              II. ANALYSIS

¶ 31        Respondent appeals, arguing the trial court erred by finding her unfit at the dispositional hearing because, by the time of the dispositional hearing, (1) her mental health issues had stabilized, (2) she had recalibrated her medications, (3) she was fully engaged in therapy, and (4) she was cooperating with DCFS. We disagree and affirm.

¶ 32                          A. The Applicable Law

¶ 33        The Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) provides a systematic framework for determining when a minor can be removed from his or her parents and made a ward of the State. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. A trial court must make a finding of abuse, neglect, or dependence regarding a child before it can adjudicate the child a ward of the court. 705 ILCS 405/2-10 (West 2020). If a trial court finds a child is neglected, then the court conducts a dispositional hearing at which the "court determines whether it is consistent with the health, safety and best interests of the minor and the public that the minor be made a ward of the court." *A.P.*, 2012 IL 113875, ¶ 21.

¶ 34        When a minor is made a ward of the court, the trial court must also "determine the proper disposition best serving the health, safety[,] and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2020). A proper disposition may include removal of the minor from his the custody of his parents if the court determines that "the parents *** are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so," and "that the health, safety, and best interest of the minor

- 7 -

will be jeopardized if the minor remains in the custody of his or her parents." *Id.* § 2-27(1). A

finding on any one of these three grounds—unfit, unable, or unwilling—provides a proper basis

for removal. *In re Lakita B.*, 297 Ill. App. 3d 985, 992-93, 697 N.E.2d 830, 835 (1998).

¶ 35        A trial court's ruling at a dispositional hearing "will be reversed only if the

findings of fact are against the manifest weight of the evidence or the court committed an abuse

of discretion by selecting an inappropriate dispositional order." *In re J.W.*, 386 Ill. App. 3d 847,

856, 898 N.E.2d 803, 811 (2008). "The trial court's finding is against the manifest weight of the

evidence if a review of the record 'clearly demonstrates' that the opposite result was proper."

*Lakita B.*, 297 Ill. App. 3d at 994 (citing *In re T.B.*, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893,

896 (1991)). Moreover, in child custody cases, " 'wide discretion is vested in the trial judge to an

even greater degree than any ordinary appeal to which the familiar manifest weight principle is

applied.' " *Id.* (quoting *In re Martin*, 31 Ill. App. 3d 288, 293, 333 N.E.2d 711, 715 (1975)).

¶ 36                                    B. This Case

¶ 37                                    1. *Waiver*

¶ 38        As a threshold matter, the State contends that respondent has waived any

challenge to the trial court's finding at the dispositional hearing that respondent was unfit

because respondent conceded at the dispositional hearing that she was unable. The State cites

*In re Harriet L.-B.*, 2016 IL App (1st) 152034, ¶ 31, 50 N.E.3d 1222, in support of this

argument.

¶ 39        In *Harriet L.-B.*, the minor was adjudicated neglected due to an injurious

environment. *Id.* ¶ 10. At the dispositional hearing, the State requested that the respondent

mother be found unable, unfit, and unwilling. *Id.* ¶ 13. The respondent mother asked the court

"for a finding of unable only." *Id.* The trial court entered an order finding the respondent mother

- 8 -

unable and unwilling to parent the minor but did not find that she was unfit. *Id.* ¶ 14.

¶ 40    On direct appeal, the respondent mother challenged the trial court's dispositional order. *Id.* ¶ 1. The First District observed that the respondent mother had conceded at the dispositional hearing that she was unable to parent the minor. *Id.* ¶ 31. Because a finding on that ground alone was sufficient to support the trial court's dispositional order, the respondent mother had waived any current challenge to the dispositional order. *Id.*

¶ 41    At first glance, *Harriet L.-B.* appears to support the State's position. However, an examination of *Lakita B.*—the case upon which *Harriet L.-B.* relied—reveals a factual distinction that renders both *Harriet L.-B.* and *Lakita B.* inapplicable to present case.

¶ 42    In *Lakita B.*, 297 Ill. App. 3d at 990, at the dispositional hearing, the respondent mother asked the trial court to find her unable, but not unfit or unwilling. The court found the respondent mother to be unfit and unable. *Id.* at 991.

¶ 43    On direct appeal, the respondent mother argued that the trial court's finding that she was unfit was against the manifest weight of the evidence. *Id.* at 987. The First District observed that the respondent mother did not challenge the court's finding that she was unable and concluded, "Because of respondent's failure to object to such a finding and her concession that the evidence established that she was unable at the time of the dispositional hearing to effectively care for the minors, respondent has waived the issue on appeal of the trial court's finding that she was unable to care for the minor children." *Id.* at 991-92. The court explained its reasoning as follows:

> "By wording the terms [unfit, unable, or unwilling] in the disjunctive [in section
> 2-27 of the Act], the legislature intended that custody of a minor can be taken
> away from a natural parent if that parent is adjudged to be *either* unfit *or* unable

*or* unwilling. Because respondent here concedes that the trial court properly found her unable pursuant to section 2-27, this factor alone as a basis for the trial court's judgment is sufficient to support the trial court's judgment and, therefore, the issue of the trial court's additional finding that respondent was unfit, is moot." (Emphases in original.) *Id.* at 992-93.

¶ 44    Like the mothers in *Harriet L.-B.* and *Lakita B.*, respondent conceded at the dispositional hearing that she was unable at that time to protect, care for, train or discipline the minors. However, unlike in *Harriet L.-B.* and *Lakita B.*, in which the trial courts found the respondent mothers to be unable *and* unfit, the trial court in the present case found respondent to be only unfit. This is a material difference. Respondent conceded that she was unable, yet the court did not find her to be unable; the court found her to be only unfit. Had the trial court found that respondent was unfit *and* unable, the present case would fall squarely within the facts and reasoning of *Harriet L.-B.* and *Lakita B.* That is to say, had the court found respondent unfit and unable, respondent's concession that she was unable would support the court's finding that she was unable and render moot any challenge to its additional finding that she was unfit. However, that is not the case before us. At no time did respondent concede that she was unfit. As such, she has not waived her challenge to the court's dispositional order.

¶ 45                           2. *The Trial Court's Unfitness Finding*

¶ 46    Although respondent has not waived her right to challenge the trial court's dispositional finding of unfitness, we disagree with respondent that the court erred by finding her unfit at the dispositional hearing.

¶ 47    In her answer to the petition, respondent stipulated to the allegations in count I of the petition, which described a serious incident in which respondent overdosed on medications,

had thoughts of self-harm, and suffered hallucinations. The minors were exposed to this incident, and A.W. had to call for help. Respondent was hospitalized as a result of this incident.

¶ 48    The dispositional report provided additional details surrounding respondent's mental health struggles and how they affected the minors. Specifically, the report stated that respondent had attempted suicide in front of the minors twice and A.W. was aware that, the week prior to the above-described overdose incident, respondent "was on a bridge ready to jump when a passerby saw her and got her to the hospital." A.W. also reported that respondent had been "hearing voices" and "laughing and dancing, acting weird" for a week prior to the overdose incident.

¶ 49    The dispositional report also documented that respondent was currently diagnosed with PTSD and bipolar disorder and had a history of major depressive mood disorder. The report further stated that respondent admitted she needed medical and clinical intervention and her mental health issues constituted a "barrier to parenting."

¶ 50    At the dispositional hearing, Couri testified that services had not started because she had not received the completed Integrated Assessment, which was in progress. Couri could not yet say that respondent was safe to be around the children. Importantly, at the dispositional hearing, respondent conceded to a finding that she was unable to parent the minors.

¶ 51    Respondent argues on appeal that, "[b]y the time of the Dispositional Hearing in this cause, it is evident that [her] mental health issues had stabilized and that she had recalibrated her medications and was fully engaged in therapy." We acknowledge that, at the time of the dispositional hearing, respondent had been engaged in counseling for two years and was attending weekly. Although we commend respondent for her consistent attendance, we cannot ignore that the incidents precipitating this case happened while respondent was apparently

engaged in this regular counseling. Thus, we cannot say that continued engagement in that same counseling demonstrated, at the time of the dispositional hearing, a stability that would render her children safe in her care.

¶ 52    To the contrary, the record before the trial court at the time of its dispositional order demonstrated that respondent suffered from mental health disorders that (1) affected the emotional and physical well-being of the minors and (2) required medical and clinical intervention. Respondent's medications had recently changed, and the services recommended by DCFS had not yet started. Those services, which the court found appropriate and reasonable, included regular drug testing, psychiatric care, and successful completion of counseling and parenting classes. Accordingly, we conclude that the trial court's finding that respondent was "unfit to care for, protect, train, educate, supervise or discipline the minor[s] and placement with her is contrary to the health, safety and best interest of the minor[s]" was supported by the evidence.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we affirm the trial court's judgments.

¶ 55    Affirmed.