NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250653-U

NO. 4-25-0653

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* H.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|     Petitioner-Appellee, | ) | No. 25JA6 |
|     v. | ) | |
| Devonte W., | ) | Honorable |
|     Respondent-Appellant. | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Harris and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court affirmed, finding the trial court's determination that respondent was unfit was not against the manifest weight of the evidence.

¶ 2     Respondent, Devonte W., was found unfit at a dispositional hearing held pursuant to the Juvenile Court Act of 1987 (Act) (see 705 ILCS 405/2-22 (West 2024)) concerning his minor child, H.W. (born in 2024). H.W. was made a ward of the court, and the Illinois Department of Children and Family Services (DCFS) was granted guardianship and custody of her. Respondent appeals, arguing the trial court's finding of unfitness was in error.

¶ 3     We disagree and, for the reasons stated below, affirm.

¶ 4                              I. BACKGROUND

¶ 5     On January 10, 2025, an investigator with DCFS filed a shelter care petition with the trial court, alleging that H.W. was neglected due to an injurious environment (see *id.* § 2-

3(1)(b)) and it was in her best interest to be made a ward of the court and placed in shelter care. The petition alleged that, a few days earlier, DCFS received a hotline report about a physical altercation between H.W.'s mother, Hailey F., and her aunt, Tiffany L., that occurred while H.W. and another minor child were in the home. Hailey was highly intoxicated at the time of the altercation. A police officer who was dispatched to the scene found H.W. and the other minor upstairs with Rochelle S., an individual who had previously been found unfit and unable due to cognitive disabilities and had her parental rights terminated in a separate juvenile case.

¶ 6       Later, a DCFS investigator returned to the home to speak with Hailey. She heard a female voice yelling obscenities from inside and called the police for assistance. When Hailey appeared, she had swollen eyes, was extremely emotional, and was difficult to keep on track. She stated that she was struggling with postpartum depression and did not want to be alone in her home due to fears of a ghost. She stated that respondent, H.W.'s father, had recently cheated on her and refused to help with H.W. She admitted that she was drinking on the day she got into a fight with Tiffany and had been drinking every day since. She stated that she had bipolar disorder, post-traumatic stress disorder, and anxiety but had not taken medication since becoming pregnant with H.W. When asked by the investigator to retrieve shoes and a coat for one of the minors in the home, she was unable to do either. The investigator noted that both minors in the home smelled of urine and that H.W. had a bandage on her thigh that was old and causing irritation to the skin. H.W. also had a dry rash over her entire body.

¶ 7       The petition also detailed Hailey's prior contact with law enforcement, including multiple incidents in which she was intoxicated and involved in violent encounters. In one such incident, on August 23, 2024, Hailey reported that respondent had grabbed her hair when she tried to get out of a vehicle. Respondent told police that Hailey was pregnant and highly intoxicated,

and when he tried to take a bottle of alcohol from her, she pulled his hair. Hailey had also been "indicated" by DCFS four prior times, between October and December 2023.

¶ 8 The trial court found, based on the allegations of the petition, there existed an immediate and urgent need to remove H.W. from the home. She was placed in the temporary custody of DCFS.

¶ 9 On February 6, 2025, respondent filed an answer to the petition, stating that he did not admit or deny the allegation concerning the August 23, 2024, incident between him and Hailey, but stipulated that it could be proven. He stated that he lacked personal knowledge as to the petition's other allegations and did not demand strict proof of them. Hailey also filed an answer, stating she did not admit or deny the allegations in the petition but stipulated that the facts could be proven by a preponderance of the evidence.

¶ 10 On May 29, 2025, the trial court held an adjudicatory hearing on the petition. It confirmed that both parents had knowingly and voluntarily stipulated to the facts of the petition such that there would not be a full evidentiary hearing. It then asked for a factual basis from the State, which the State provided. Based on the parties' answers and the State's proffer, the court found H.W. to be neglected due to an injurious environment.

¶ 11 The trial court proceeded immediately to a dispositional hearing. It stated it had received and reviewed multiple reports filed by "Caseworker Mitchell." Although the court does not specifically identify the reports it considered, the record contains a report prepared on April 23, 2025, titled "DISPOSITIONAL HEARING" and authored by Grace Mitchell. This report states that respondent previously lived in an apartment in Peoria but was seeking a new apartment due to safety concerns. During a child and family team meeting in early February 2025, he reported that he smoked marijuana occasionally. As a result, he was assigned at the time to complete two

to three drug tests during the reporting period so the agency could "gain an understanding of where [his tetrahydrocannabinol (THC)] levels [were]." However, in the weeks following that meeting, respondent failed to complete any random drug testing. He also later reported that he smoked marijuana daily. He was therefore assigned to complete drug testing twice a month.

¶ 12 The report stated that in early March 2025, respondent missed a drug test due to miscommunication with a caseworker. The caseworker accepted responsibility for the missed test. In mid-March, respondent failed to complete another drug drop because he did not bring identification to the testing station. The report concluded that, "considering the lack of drug drops completed, and the lack of safe and stable housing, [respondent] [did] not meet minimal parenting standards." It added that more time was needed for respondent to complete random drug drops so the casework team could understand his marijuana use.

¶ 13 The record also contains a "DISPOSITIONAL ADDENDUM," which states that, at a third drug drop on April 24, 2025, respondent tested positive for THC.

¶ 14 At the hearing, upon questioning by counsel for respondent, a caseworker confirmed that respondent had signed all releases asked of him, cooperated with the agency, been communicative, had positive visits with his child, behaved appropriately with his child, provided documentation of his prescriptions, and attended all services he had enrolled in. The caseworker further confirmed that respondent had moved out of his former apartment and was currently living with friends while seeking another residence. She agreed that housing was "the only barrier [she] [saw] to his ability to meet minimum parenting standards for [H.W.]" She agreed that an order indicating respondent was fit but unable to care for H.W. due to housing issues would be appropriate.

¶ 15 The matter proceeded to argument. The State argued that respondent should be

found unfit based on his unstable housing and his continued use of marijuana. Counsel for respondent asked for a finding of fit but unable, noting that although respondent had tested positive for "very, very low" levels of THC in one drug test, he had since stopped using, and future tests would reflect this change. Counsel emphasized that the agency's reports and the testimony of the caseworker established respondent's fitness in parenting. The guardian *ad litem* (GAL) for H.W. argued that, although it was a "close[ ] call," respondent should be found unfit due to housing and drug use. However, she noted her belief that respondent could "regain fitness very, very quickly."

¶ 16 The trial court agreed with the State and the GAL and found respondent unfit. It stated,

"So the issue is[,] is [respondent], you know, fit but unable or unfit? That's really the question. And I recognize that [respondent] was not a contributory party to why the children came into care, like the kids were primarily with Hailey and I get that. I do want to see sobriety before I'm willing to enter into fitness finding for dad.

I absolutely echo what the GAL said. I think we're real close to that. I just need more. I need more drops and I need drops that are negative or descending levels at least, right? We all know THC may take a while to get out of your system. But as long as that's coming out of your system, it sounds like you are a great nurturing dad and it's natural for you. *** But you got to get a good house that's ready and equipped for [H.W.] And, again, I don't mean good house like it looks like the cover of a magazine[,] just safe, stable housing where you're not couch surfing kind of the situation and then get some clean drops and I'll certainly entertain motions for fitness relatively quickly."

¶ 17 The trial court also found Hailey unfit. It determined it was in H.W.'s best interest

to be made a ward of the court, and custody and guardianship were continued with DCFS.

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 Respondent appeals the trial court's finding of unfitness. Although Hailey was also found unfit, she is not a party to this appeal.

¶ 21 Respondent's first contention concerns the appropriate standard of review to be applied in this case. He acknowledges that we generally review a trial court's finding of parental unfitness under the manifest-weight-of-the-evidence standard. See *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008). However, he argues that, because both parents here stipulated to the facts of the petition, a deferential standard of review is unnecessary because the court did not hear any witness testimony and was therefore not in a better position to assess credibility or weigh the evidence.

¶ 22 While the principle underlying respondent's theory has support (see *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 28 (applying a *de novo* standard of review where the trial court's decision was based on a stipulated record and no live witness testimony was heard)), we find it inapplicable to the instant case. Despite both parents forgoing a full evidentiary hearing at the adjudicatory phase of proceedings, at the dispositional phase, counsel for respondent questioned the caseworker about respondent's compliance with all aspects of his service plan, as well as her own opinion regarding his fitness. The trial court was able to hear the caseworker's answers and assess her credibility, and take it into account when weighing the evidence. We find this sufficient to justify a deferential standard of review. We will therefore review the court's unfitness finding under the manifest-weight-of-the-evidence standard.

¶ 23 A. Invited Error

¶ 24 Respondent argues that the trial court's unfitness finding was in error. However,

before we address the merits of respondent's argument, we must first address a preliminary issue raised by the State.

¶ 25    The State argues that respondent "invited error" by conceding that he was unable to have H.W. placed with him due to a lack of safe and adequate housing. The State notes that, under section 2-27 of the Act (705 ILCS 405/2-27 (West 2024)), a minor may be removed from a parent where the parent is determined to be unfit *or* unable *or* unwilling. In other words, any one of those three grounds is sufficient to support a court's decision to remove a minor from a parent's care. *In re Lakita B.*, 297 Ill. App. 3d 985, 992 (1998). According to the State, "Respondent cannot consent to a basis that would have resulted in H.W. being in DCFS care, and then argue on appeal that H.W. should not have [been] placed in DCFS custody." The State continues, "Because the outcome of the proceeding would not have been different regardless of the basis found, this Court should affirm the trial court's determination that respondent was unfit."

¶ 26    We disagree with the State on this point for two reasons. First, respondent does not argue on appeal that H.W. should not have been placed with DCFS. Nor does he argue that she should not have been made a ward of court at all. He specifically contests the trial court's finding that he was unfit. His argument at the dispositional hearing that he should be found fit but unable does not constitute an invited error; indeed, it is consistent with his argument on appeal.

¶ 27    Second, although the trial court finding that respondent was unable would have had the same effect as it finding him unfit—allowing it to place H.W. outside of his care—this is irrelevant. We are reviewing the trial court's findings, not the *effect* of its findings. Respondent's concession that he was unable at the dispositional hearing has no bearing on our review of the trial court's finding that he was unfit.

¶ 28    The State acknowledges that we have previously addressed a similar issue in *In re*

*L.W.*, 2022 IL App (4th) 220052-U. There, the State argued that the respondent mother had waived any challenge to the trial court finding her unfit at the dispositional hearing because, at the same hearing, she had conceded she was unable. *Id.* ¶ 38. In our discussion, we noted that while the respondent had conceded she was unable, the trial court had not in fact found her to be unable. *Id.* ¶ 44. It only found her to be unfit. *Id.* Had the court made both findings, the "respondent's concession that she was unable would support the court's finding that she was unable and render moot any challenge to its additional finding that she was unfit." *Id.* Because the court only found the respondent to be unfit, and she did not concede this point, we found she had not waived her challenge to the trial court's dispositional order. *Id.* Put another way, the fact that the respondent mother conceded she was unable, which would have resulted in removal of her children from her care, did not prevent her from contesting the court's unfitness finding on appeal, though the practical result of either finding was the same.

¶ 29    Similar reasoning applies here. Where the trial court only found respondent to be unfit, and he conceded only the point of inability, we reject any claim by the State that he has invited the error he contests on appeal, namely the court's finding of unfitness. The State asserts that *L.W.* was decided incorrectly but offers no explanation beyond the same reasoning we rejected in that case. We are unpersuaded.

¶ 30    The State alternatively requests that we exercise our discretion under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) and "enter an order finding respondent unable, based on his admission." Rule 366(a)(5) allows us, as a reviewing court, to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders." *Id.* We decline to address this argument because, for the reasons detailed below, we find the trial court's overall finding of unfitness was not against the manifest weight of the evidence and affirm

on that basis.

¶ 31                                    B. Unfitness

¶ 32            Respondent argues that the trial court erred in finding him unfit because, at the time of the dispositional hearing, he had signed all releases asked of him, was cooperative and communicative with the agency, was fully engaged in the agency's recommended services, and had regular, positive visits with his daughter, at which he was caring and nurturing. He acknowledges that he self-reported daily marijuana use and tested positive for THC but argues that no evidence was presented that his marijuana use ever impaired his ability to effectively parent his daughter. He acknowledges that his housing situation was unstable but argues this should have led the court to find him merely unable, as opposed to unfit.

¶ 33            The Act sets forth the procedure by which a minor may be removed from his parent's custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18. First, the trial court must hold an adjudicatory hearing to determine whether the minor is abused, neglected, or dependent. *Id.* ¶ 19. If the court so concludes, it then must hold a dispositional hearing to determine whether it is in the minor's best interest to be made a ward of the court. *Id.* ¶ 21. Once a child is made a ward of the court, the court must choose an appropriate disposition for the minor. *J.W.*, 386 Ill. App. 3d at 856. If the court determines that the minor's parents are unfit or unable to "care for, protect, train or discipline the minor or are unwilling to do so, and *** the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents," the court may place the child in the care of DCFS. 705 ILCS 405/2-27(1)(d) (West 2024). "[T]he standard for a finding of unfitness at the dispositional stage under the Act is less stringent than the standard for such a finding *** for purposes of terminating parental rights." *In re A.L.*, 2023 IL App (4th) 230069, ¶ 31. At a dispositional hearing, the court need only find respondent

unfit under the ordinary meaning of the word. *In re A.R.*, 2022 IL App (3d) 210346, ¶ 17. " 'Unfit' generally means: 'not adapted to a purpose: UNSUITABLE' or 'not qualified: INCAPABLE, INCOMPETENT.' " *Id.* (quoting Merriam-Webster's Collegiate Dictionary 1286 (10th ed. 2000)).

¶ 34    A trial court's finding of dispositional unfitness will only be reversed if it is against the manifest weight of the evidence. *Lakita B.*, 297 Ill. App. 3d at 994. A decision is against the manifest weight of the evidence only if the opposite result is clearly proper. *Id.* We will not reverse a trial court's finding of unfitness merely because we might have reached a different result. *Id.*

¶ 35    Here, respondent challenges only the trial court's finding that he was unfit. The court based that finding on two factors: respondent's use of marijuana and his unstable housing. We will address each in turn.

¶ 36    To begin, we find that the trial court's determination that respondent was unfit based on his marijuana use was against the manifest weight of the evidence. Respondent admitted to using marijuana daily, and the court seemingly found him unfit on the basis that it lacked information as to his sobriety, stating it needed more drug drops to determine the extent of his marijuana use and if it was decreasing. However, the State never presented evidence that respondent's marijuana use was ever substantial to begin with or in any way impacted his ability to care for his child. Indeed, respondent had not been recommended to complete any substance abuse assessment or treatment because, absent the results of the missed drug tests, it was unclear if his use of marijuana presented any issue. We disagree with the implication that the mere use of marijuana alone, without any evidence that the substance is being abused, constitutes unfitness. For this reason, we find the trial court's conclusion that respondent was unfit based on his use of marijuana was against the manifest weight of the evidence.

¶ 37    However, the trial court's finding that respondent was unfit based on his lack of

adequate housing was not against the manifest weight of the evidence. The evidence presented at the dispositional hearing showed respondent had previously resided in an apartment that he deemed unsafe for a child and was in the process of searching for a new residence. At the time of the hearing, he lacked permanent housing and was staying with friends. Respondent argues that, based on these facts, the court should only have found him unable, not unfit, but we disagree. A lack of stable housing could be said to render respondent unfit for the task of parenting his daughter, at least temporarily. Although we may have reached a different conclusion in the trial court's place, we cannot say that its determination in this regard was against the manifest weight of the evidence.

¶ 38                                    III. CONCLUSION

¶ 39            For the reasons stated, we affirm the trial court's judgment.

¶ 40            Affirmed.