2022 IL App (3d) 210346

Opinion filed May 17, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* A.R., | ) | Appeal from the Circuit Court |
| | ) | of the Fourteenth Judicial Circuit, |
| a Minor | ) | Henry County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0346 |
| | ) | Circuit No. 20-JA-64 |
| v. | ) | |
| | ) | |
| Cassandra C., | ) | |
| | ) | The Honorable |
| Respondent-Appellant). | ) | James J. Cosby, |
| | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Hauptman and Lytton concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    The State filed a neglect petition on behalf of A.R., alleging that A.R.'s mother,

Cassandra C. (respondent), provided an environment injurious to the minor's welfare. After a

finding of neglect and a dispositional hearing, the circuit court found respondent unfit to care for

A.R. Respondent appeals the court's finding of her dispositional unfitness. We affirm.

I. BACKGROUND

¶ 3        On December 21, 2020, the State filed a neglect petition alleging that A.R.'s environment was injurious to welfare because (1) respondent had three "prior indicated reports," (2) respondent had not complied with the Department of Children & Family Services (DCFS) service plan, and (3) respondent had "unresolved mental health issues." The State also alleged "that the legal status" and whereabouts of Ryan R. (whom respondent identified as the putative father) were unknown and that Ryan R. was not part of A.R.'s life. The State contended that these conditions placed A.R. "at risk of harm."

¶ 4        On January 21, 2021, DCFS reported to the court that Ryan R. had been located and his suitability for placement of A.R. was being explored. DCFS also filed a Status Alert stating that visitation between respondent and A.R. was stopped due to safety concerns for the staff. The alert indicated respondent began texting threats to Help at Home, the agency facilitating visitation, and to the DCFS caseworker on January 16. Help at Home received over 100 text messages. The staff member blocked respondent and filed a police report complaining that respondent had threatened the lives of the staff member and her family. The DCFS caseworker received over 500 text messages between Saturday and Tuesday. A report filed January 20, 2021, with the Henry County Sheriff's Department alleged that respondent had threatened to come after the DCFS worker, "rip out the caseworker's throat," " 'take out' the caseworker's entire family[,] and kill" the worker. The alert stated there was concern regarding respondent's mental health as she had not had an assessment or taken any steps to address her issues. Although the minor was treated for swollen lymph nodes, respondent refused to accept the diagnosis, obsessed that her child was being abused, and called the health department and threatened staff there. The alert further stated that respondent believed DCFS, the trial court, and law enforcement were

"after her" because of a worker's compensation suit she had filed. Respondent also claimed someone was stealing her mail and following her around town.

¶ 5        On February 10, 2021, at a pretrial hearing, it was noted that Ryan R.'s paternity had been established in Henry County case No. 2015F80 and, while A.R. remained in the temporary custody of DCFS, she had been physically placed with Ryan R. Respondent was not present at that hearing and her counsel did not know her whereabouts. On April 5, 2021, DCFS filed a subsequent status report. It stated that A.R. had been placed with Ryan R. on January 30, 2021 and that the placement had been successful to that point. A.R. was "comfortable . . . relaxed and happy" in the home, her needs were being met, and she was attending school and receiving speech services. According to the report, respondent still insisted (1) that there was a connection between DCFS, the trial court, and law enforcement because they were "after her" due to her worker's compensation suit and (2) that someone was stealing her mail and following her.

¶ 6        The circuit court held an adjudicatory hearing on June 23, 2021. The testimony at the hearing showed DCFS investigators visited respondent's home and conducted at least one welfare check with police officers to determine A.R.'s safety. During their visits, the investigators could not locate respondent but met her son and learned that her electricity had been shut off. Respondent's son told the investigators that he was concerned about his mother's mental health. Once respondent was located, she told the investigators that she believed she was being followed and threatened by unknown persons. She said she would no longer stay at her house because somebody had been flying drones through the vents and there was someone in a crop duster flying over her house and keeping an eye on her. Respondent also reported that she was having problems with a church in Kewanee and that people were harassing her and causing her issues. She indicated people were breaking into her house, stealing her mail, and threatening

3

her. Finally, respondent told the investigators that her doctor said she was in a "meth induced" psychosis. Although she denied using methamphetamine, she refused to sign a release of her medical records.

¶ 7    Following the close of arguments, the court noted that a "key" allegation was that respondent had unresolved mental health issues. It stated that it had observed respondent's behavior in the courtroom and listened to her testimony, concluding that the testimony showed that (1) respondent had unresolved mental health issues, (2) respondent was not answering phone calls or text messages for weeks at a time, (3) respondent's home was unsuitable because it was left unsecured and the power had been shut off, (4) A.R. was not going to school when she was in respondent's care; (5) DCFS tried to help respondent, and (6) respondent failed to take advantage of the help. The court then found that the State had met its burden for the adjudication of neglect. It entered a written adjudicatory order, finding the evidence established respondent presented a risk to A.R. because she had three prior indicated reports, had unresolved mental health issues, and had not complied with DCFS's services.

¶ 8    On July 21, 2021, DCFS filed a dispositional report, repeating and summarizing the testimony presented at the June 23 adjudicatory hearing. On August 4, 2021, the court held a dispositional hearing, taking judicial notice of the dispositional report and taking the testimony of Sherri George-McHugh and respondent. George-McHugh stated that she was a DCFS child welfare specialist assigned to A.R.'s case. She presented screenshots of threats respondent made to a caseworker. In the course of a single weekend, respondent had sent George-McHugh around 700 text messages, including threats against her family. Respondent also became physically intimidating during a supervised visit. Finally, George-McHugh testified that respondent had called her the day before the hearing to say that she had spoken with a therapist, but, citing

4

"HIPAA," she refused to sign any releases. George-McHugh recommended that A.R. be adjudicated a ward of the court, with DCFS having the right to place her. She opined that Ryan R. was fit and that A.R. could not be safe in respondent's care. George-McHugh explained that, before DCFS could close the case, a family case would need to be opened and a family order entered awarding Ryan R. custody of A.R.

¶ 9    Respondent testified she had an appointment with her therapist on the day following the hearing; she asserted that it was her third appointment. On cross-examination by the State, she identified her therapist as "Ollie" at First Choice Healthcare in Kewanee, but she could not provide a last name and did not sign a medical release. Respondent explained that she did not "just go off," but that her daughter had been "stolen" from her. She stated: "You charged me with something I did not do, took my mail, left me in a house with no power." Respondent further stated that she did not believe there was anything wrong with her and that she would not consider therapy with a different provider. Finally, respondent explained that she had "no clarity" on why "this was happening to [her]" and stated that she did not believe her therapist could assist her in achieving "clarity."

¶ 10    After hearing arguments, the court stated that it had observed respondent's behavior during her testimony and found her conduct was as the DCFS investigators reported. It found the evidence before it made it "very clear" that respondent was both unfit and unable to provide for A.R.'s care and welfare, that to place A.R. with or return her to respondent presented an overwhelming risk to both her physical and mental health, that Ryan R. had a stable and adequate home with an adequate income, and that A.R. was safe at Ryan R.'s home. The court ordered that A.R. be made a ward of the court and that guardianship of A.R. remain with Ryan R.

¶ 11        Respondent appeals the circuit court's dispositional order.[1]

¶ 12                         II. ANALYSIS

¶ 13        On appeal, respondent challenges the sufficiency of the evidence to support the dispositional finding of unfitness. Alternatively, respondent argues that the circuit court's dispositional order violated her constitutional rights. For the reasons that follow, we disagree with both contentions and affirm the circuit court's order.

¶ 14                 A. The Sufficiency of the Evidence

¶ 15        In her opening brief, respondent first argued that the testimony at the dispositional hearing was insufficient to support the court's finding that she was unfit or unwilling to care for A.R. She asserted that the court's finding relied on allegations and testimony that she had "unresolved mental health issues." Citing section 1(D)(p) of the Adoption Act (750 ILCS 50/1(D)(p) (West 2020)), respondent contended that the court's finding was based on mental impairment requiring "competent evidence from a psychiatrist, licensed clinical social worker, or clinical psychologist."

¶ 16        The State counters that respondent's argument confuses the unfitness finding in a termination proceeding with that in a dispositional hearing, asserting that the dispositional finding does not require the same level of proof as the termination proceeding. In her reply brief, respondent concedes that section 1(D)(p) does not apply to the dispositional finding in this case. We agree with the State and accept respondent's concession.

¶ 17        Where the State does not seek to terminate the parental rights of a respondent, the court—upon finding respondent was unfit, unable, or unwilling—was limited to the placement options

---

[1]Although only respondent and the State filed briefs in this appeal, A.R.'s guardian *ad litem* entered his appearance and presented oral argument before us. We do not believe that this entry was proper and, therefore, rely solely on the briefs and arguments from the parties properly before us.

in section 2-27(1) of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/2-27(1) (West 2020));

see also *In re April C.*, 326 Ill. App. 3d 245, 257-58 (2001) (citing 705 ILCS 405/2-27(1) (West

1998)). The consequences of a proceeding seeking to divest a parent of custody and guardianship

following a finding of abuse or neglect and a proceeding seeking termination of parental rights

for adoption purposes are different, and the stringency of the requisite "unfitness" as it relates to

each proceeding is also different. *Id.* at 257 (citing *In re T.B.*, 215 Ill. App. 3d 1059, 1061

(1991)). Under section 2-27(1), the State need only prove respondent unfit under the ordinary

meaning of that term. 705 ILCS 405/2-27(1) (West 2020). "Unfit" generally means: "not adapted

to a purpose: UNSUITABLE" or "not qualified: INCAPABLE, INCOMPETENT." Merriam-

Webster's Collegiate Dictionary 1286 (10th ed. 2000).

¶ 18      We will reverse a finding of dispositional unfitness where the court's "findings of fact are

against the manifest weight of the evidence" (internal quotation marks omitted), such that "the

record clearly demonstrates that a result opposite to the one reached by the trial court was the

proper result." *In re A.T.*, 2015 IL App (3d) 140372, ¶ 13. The record before us does not clearly

command an opposite finding regarding respondent's unfitness.

¶ 19      The July 21 dispositional report showed that respondent expressed to DCFS investigators

a belief that she was being followed and threatened by unknown persons. She said she would no

longer stay at her house because somebody had been flying drones through the vents and there

was someone in a crop duster flying over her house and keeping an eye on her. Respondent also

believed that people at a church in Kewanee were harassing her and causing her issues. She

indicated people were breaking into her house, stealing her mail, and threatening her.

¶ 20      The court concluded that respondent's behavior during her testimony and the content of

her testimony corroborated the allegations in the dispositional report. Although we ordinarily

simply defer to the trial court's factual findings and credibility determinations (*In re Faith S.*, 2019 IL App (1st) 182290, ¶ 78), our own review of respondent's testimony supports the court's conclusion. At the hearing, respondent persistently expressed beliefs consistent with the allegations challenging her mental stability and questioning her ability to maintain a non-injurious environment for her child. For example, she accused the State of "stealing" her daughter, causing her to "go off" on an investigation to find her. She also accused the State of requiring her to stay in the house without "electricity," as well as stealing her mail. Finally, although respondent admitted that she lacked "clarity" claiming her legal circumstances and stated that she was in therapy, she expressed skepticism about the potential effectiveness of any therapy to help her.

¶ 21        George-McHugh's testimony showed that respondent's beliefs affected her interactions with DCFS personnel. At the June 23 adjudicatory hearing and in the report, the evidence showed that respondent sent hundreds of threatening messages to DCFS investigators. Corroborating this allegation, George-McHugh stated that respondent sent around 700 text messages directly to her, including threats against her family, in the course of one weekend. Also corroborating the report, George-McHugh recalled respondent becoming physically threatening towards her during a supervised visit. Respondent's behavior, as reported by George-McHugh, showed that she so mistrusted DCFS's services and motivations that she could not interact appropriately with agency staff. We find, therefore, that the record before us shows that respondent had unresolved mental health issues that placed A.R. at significant risk of harm.

¶ 22        After conceding the error of her original challenge to the standard of unfitness in abuse and neglect proceedings (*supra* ¶ 16), respondent argues for the first time in her reply brief that section 2-27(1) is unconstitutionally vague because it fails to properly define the term "unfit."

Issues and arguments raised for the first time in a reply brief are forfeited unless they are responsive to arguments on the issue of waiver. *People v. Bitner*, 89 Ill. App. 3d 1106, 1110 (1980); see also *People v. Brooks*, 377 Ill. App. 3d 836, 841 (2007). Respondent's constitutional challenge on this basis is, therefore, forfeited and we do not address it.

¶ 23                                    B. Respondent's Constitutional Rights

¶ 24        Respondent next argues that the court's dispositional order is unconstitutional because it infringes on her fundamental rights under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV).[2] "[A] parent's right to control the upbringing of [her] child is a fundamental constitutional right." *In re R.C.*, 195 Ill. 2d 291, 303 (2001). In cases where state action infringes upon a "fundamental constitutional right, courts subject [it] to strict scrutiny." (Internal quotation marks omitted.) *Id.* The action will be upheld only where it is "necessary to serve a compelling state interest, and [it is] narrowly tailored thereto," employing only "the least restrictive means consistent with the attainment of [that interest]." *In re D.W.*, 214 Ill. 2d 289, 311 (2005).

¶ 25        The parties agree that the State has a compelling interest in protecting a child's welfare. *In re R.C.*, 195 Ill. 2d at 308. Respondent's argument does not challenge that interest. Instead, respondent argues that the finding of unfitness was not a narrowly tailored advancement of this interest. She contends that once Ryan R. was found fit and A.R. was placed in his care, it was unnecessary "to the State's interest to proceed to a finding of unfitness." She explains that the unfitness finding could only be in anticipation of a petition to terminate her parental rights. We disagree.

---

[2]This argument is separate and different from the unconstitutional vagueness argument raised for the first time in respondent's reply brief.

¶ 26    We note the State argues that respondent has forfeited this argument on appeal. Respondent counters that if the argument is forfeited, her trial counsel was ineffective for not raising it in the circuit court. "Although there is no constitutional right to counsel in abuse and neglect proceedings, a statutory right to counsel is granted under the Act." *In re L.S.*, 2022 IL App (1st) 210824, ¶ 117 (citing *In re Br. M.*, 2021 IL 125969, ¶ 41). "Claims of ineffective assistance of counsel in parental rights proceedings are assessed using the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Id.* ¶ 118 (citing *In re Br. M.*, 2021 IL 125969, ¶ 43). Respondents must show that their counsel "rendered substandard representation and that [they] suffered resulting prejudice from the deficient representation." *Id.* Failure to establish either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Id.* For the reasons that follow, we find that respondent's constitutional right was not violated and, therefore, even if counsel's representation was substandard, respondent suffered no prejudice.

¶ 27    Respondent confuses the dispositional unfitness finding with the unfitness finding in a termination proceeding. The underlying abuse and neglect proceedings are governed by the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2020)). Under the Act, once a minor has been found abused or neglected, the trial court must schedule and conduct a dispositional hearing to "determine whether it is consistent with the health, safety[,] and best interests of the minor and the public that [the minor] be made a ward of the court." 705 ILCS 405/2-21(2) (West 2020). The court "is not required to make every child a ward of the court *** but must selectively designate children to become wards of the court, who otherwise do not have a parent or parents who will act in the best interests of the children without some degree of court intervention." *In re C.L.*, 384 Ill. App. 3d 689, 695 (2008). "That said, a biological parent has superior rights to the

State and may step in to parent his or her children when the other parent for some reason can no longer properly exercise his or her parental responsibilities." *Id.* at 696.

¶ 28 "Without a finding of unfitness or a properly supported finding that respondent was unable or unwilling to care for [A.R.], the trial court was not authorized to make [A.R. a ward] of the court and to grant custody and guardianship of [A.R.] to DCFS." *In re M.M.*, 2015 IL App (3d) 130856, ¶ 15. While Ryan R.'s legal status remained unknown to the State and respondent was A.R.'s sole custodian and guardian, respondent held rights to A.R. that were superior to his and to the State's until the court found her "unfit, unwilling, or unable to care for [A.R.]." *Id.* Accordingly, the fitness hearing and the resulting finding of unfitness at issue here were necessary to achieve the State's compelling interest of protecting A.R.'s welfare. The court could not award custody to DCFS or Ryan R. until after it had entered its dispositional finding that respondent was no longer fit to act as her guardian. *Id.* Therefore, we hold that the fitness finding was appropriately grounded and properly tailored and did not violate respondent's constitutional rights.

¶ 29                                                    III. CONCLUSION

¶ 30        The judgment of the circuit court of Henry County is affirmed.

¶ 31        Affirmed.

**No. 3-21-0346**

| | |
|---|---|
| **Cite as:** | *In re A.R.*, 2022 IL App (3d) 210346 |
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, No. 20-JA-64; the Hon. James J. Cosby, Judge, presiding. |
| **Attorneys for Appellant:** | JohnPatrick Brown, of Nash Bean Ford & Brown LLP, of Geneseo, for appellant. |
| **Attorneys for Appellee:** | Catherine L. Runty, State's Attorney, of Cambridge (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>William L. Breedlove, of Breedlove Legal, LLC, of Moline, guardian *ad litem*. |