NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230069-U

NO. 4-23-0069

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|     Petitioner-Appellee, | ) | No. 22JA311 |
|     v. | ) | |
| Lisa H., | ) | Honorable |
|     Respondent-Appellant). | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's findings that (1) the minor was neglected and (2) respondent was unfit or unable to care for the minor were not against the manifest weight of the evidence.

¶ 2        Respondent, Lisa H. (Mother), appeals the trial court's orders finding her daughter, A.L. (born June 2017), a neglected minor and finding her unfit and unable to care for A.L. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Neglect Petition

¶ 5        On July 5, 2022, the State filed a petition pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2022)), alleging A.L. was neglected by Mother because A.L. was in an environment injurious to her welfare. Specifically, the petition alleged Mother had substance abuse issues (count I) and mental health issues (count II), which prevented

her from properly parenting A.L.

¶ 6                              B. Shelter Care Hearing

¶ 7        The trial court considered a statement of facts prepared by the Illinois Department of Children and Family Services (DCFS), which asserted A.L. was brought by ambulance to a hospital for a fever on July 1, 2022. Mother was "physically aggressive" with the ambulance personnel, hospital staff, and law enforcement, and her behavior indicated substance abuse. Mother was arrested for disorderly conduct and aggravated battery to a police officer and a security officer. After Mother's arrest, A.L. was placed in DCFS's custody.

¶ 8        At the shelter care hearing, Mother waived her right to a hearing and stipulated (1) probable cause existed to believe A.L. had been neglected, and (2) an immediate and urgent necessity required A.L. to be placed in shelter care. The trial court entered an order placing A.L. in the temporary custody of DCFS.

¶ 9                              C. Adjudicatory Hearing

¶ 10        At the adjudicatory hearing, the State offered into evidence A.L.'s and Mother's certified medical records for the dates A.L. was hospitalized, and a DCFS "indicated packet," to which a general hearsay objection was made. Everything else was admitted without objection. Rockford police officer Kristine Fabiani testified she arrived at the hospital on July 1, 2022, at approximately 2 a.m., and she observed Mother yelling at security. Fabiani tried to calm Mother down. According to Fabiani, Mother continued yelling and "plugged one of her nostrils and blew the contents of her nose" onto Fabiani's vest. Mother was subsequently arrested for blowing mucus onto Fabiani and for an earlier incident involving a hospital security officer. Fabiani stated A.L. was awake and observed Mother's behavior in the treatment room. Mother's father, David H., testified on her behalf, stating he was not aware she had any substance abuse or mental

health issues. The court took judicial notice of a prior neglect petition and adjudication order from 2017.

¶ 11 On October 31, 2022, the State sought to amend its neglect petition to add a third count based on Mother's behavior at the hospital. The trial court found the amendment did not prejudice any party, as the facts surrounding the additional count were fully litigated at the previous hearing and the State had the right to amend their petition to conform to the proofs. Noting the court heard "substantial testimony" regarding the incident at the hospital, and the parties had a full opportunity to cross-examine the witnesses presented, the court allowed the amendment.

¶ 12 The trial court found the State proved count II, regarding Mother's mental health issues, and count III, based on Mother's behavior at the hospital, by a preponderance of the evidence. The court extensively referenced the evidence presented. The court found A.L. neglected because her environment was injurious to her welfare.

¶ 13 D. Dispositional Hearing

¶ 14 After several continuances, the dispositional hearing began on December 12, 2022. The State offered into evidence the following: a DCFS integrated assessment (People's exhibit No. 1), a service plan approved October 31, 2022, and filed November 1, 2022 (People's exhibit No. 2), a November 18, 2022, court report (People's exhibit No. 3), a December 9, 2022, court report (People's exhibit No. 4), and Mother's mental health assessment (People's exhibit No. 5), which were all admitted without objection. According to the DCFS integrated assessment, Mother had a history of alcohol "misuse," anxiety, depression, and impulsivity. The November 2022 report indicated Mother tested positive for alcohol and cocaine in September 2022. The mental health assessment indicated Mother met the diagnostic criteria for post-

traumatic stress disorder and attention-deficit/hyperactivity disorder. The hearing was then continued and recommenced on January 13, 2023. The previously absent witness, Kelly Caudel of the Youth Services Bureau, filed a court report in the interim, which was admitted without objection. The State relied upon the information contained in the various reports.

¶ 15 David H., Mother's father and A.L.'s foster parent, testified he did not observe Mother behave irrationally when interacting with A.L, nor did he witness Mother under the influence of any "substances" when visiting A.L. On cross-examination, he acknowledged this was not the first time A.L. had been placed in his care. He believed Mother had completed all her services.

¶ 16 Mother testified she participated in mental health counseling and two substance abuse assessments. She admitted she tested positive for cocaine and alcohol in September 2022, but she insisted she was only required to continue attending Alcoholics Anonymous (AA) classes. Mother had switched mental health medications recently, and she felt they were helping her by "keeping [her] head on straight, helping [her] sleep at night, reducing a lot of anxiety." Mother claimed she could not contact her caseworker when necessary. She acknowledged A.L., who was five years old at the time, had been in DCFS care "a couple of times." She also admitted she previously mentioned giving up her parental rights to A.L. because she was "tired of going through this process." During further cross-examination by the guardian *ad litem*, Mother stated she did not believe the positive drug drop and did not change her AA meeting schedule or seek any additional services afterward.

¶ 17 On January 13, 2023, the trial court entered a dispositional order finding Mother unfit and unable to care for A.L. The court found this was A.L.'s third time in DCFS's custody. The court highlighted Mother's "significant substance abuse issues involving alcohol" and her

recent positive drug test for cocaine and alcohol. The court observed Mother missed multiple drug screenings, including several in November 2022. The court also expressed concern for Mother's mental health issues, recognizing A.L. came into care due to Mother's lack of mental stability and her erratic behavior at the hospital. The court referenced medical records identifying Mother's presenting problems as anxiety, adjustment to trauma, impulsivity, and hyperactivity, which resulted in the recommendation for treatment through outpatient services. Acknowledging Mother successfully completed a group program, the court advised her, "We are well on our way, I believe, to returning your child to your care." The court made A.L. a ward of the court and granted custody and guardianship to DCFS. The court set A.L.'s goal at return home within 12 months.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    Pursuant to the Act, there is a two-stage process the trial court must follow prior to making a neglected minor a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. First, the court must determine, by a preponderance of the evidence, whether the minor is neglected. *A.P.*, 2012 IL 113875, ¶ 19. If the court finds the minor is neglected, the court "determines whether it is consistent with the health, safety and best interests of the minor and the public that the minor be made a ward of the court." *A.P.*, 2012 IL 113875, ¶ 21.

¶ 21    Mother argues the trial court erred in finding A.L. was neglected and finding her unfit or unable to care for A.L. We address each contention in turn.

¶ 22                              A. Neglect Adjudication

¶ 23    Neglect cases are "*sui generis*, and must be decided on the basis of their unique circumstances." *In re Arthur H.*, 212 Ill. 2d 441, 463, 819 N.E.2d 734, 747 (2004). " 'Neglect' is

defined as the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duty." *In re Kamesha J.*, 364 Ill. App. 3d 785, 792-93, 847 N.E.2d 621, 628 (2006). A parent has a duty to shield their child from harm. *Kamesha J.*, 364 Ill. App. 3d at 793. A trial court's finding of neglect is afforded great deference and will not be overturned unless it is against the manifest weight of the evidence. *In re R.S.*, 382 Ill. App. 3d 453, 459, 888 N.E.2d 542, 548-49 (2008). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *R.S.*, 382 Ill. App. 3d at 459.

¶ 24        On appeal, Mother argues the trial court erred in its neglect finding because a single incident of "erratic" behavior is insufficient to show neglect. Mother cites *In re S.G.*, 2022 IL App (1st) 210899, 202 N.E.3d 396, and *In re N.B.*, 191 Ill. 2d 338, 730 N.E.2d 1086 (2000), in support of her position. We find these cases distinguishable.

¶ 25        In *S.G.*, the appellate court considered whether a single suicide attempt was sufficient to support a finding the respondent's children were abused due to a substantial risk of physical injury. *S.G.*, 2022 IL App (1st) 210899, ¶ 36. The court noted the respondent "immediately realized her mistake" and called 911, thereby mitigating the risk to her children. *S.G.*, 2022 IL App (1st) 210899, ¶ 36. The court considered the totality of the evidence and reversed the trial court's adjudication of abuse. *S.G.*, 2022 IL App (1st) 210899, ¶ 37.

¶ 26        In *S.G.*, the respondent immediately recognized her mistake and took action to prevent risk to her children. *S.G.*, 2022 IL App (1st) 210899, ¶ 36. While Mother here initiated medical care for A.L., she subsequently interfered with A.L.'s treatment at every step. The trial court specifically commented on notations made by various medical staff, who characterized Mother's behavior as bizarre, erratic, and aggressive. Mother was angry with the choice of hospital for A.L.'s emergency care. Mother refused to let staff put ice packs on A.L., whose

temperature was over 102 degrees at the time. Mother also refused to cooperate with medical staff regarding A.L.'s medical history. Mother's behavior toward the medical staff was threatening and inhibited their ability to assess and treat A.L.

¶ 27 The respondent in *N.B.* had two angry outbursts at a county health department facility, neither of which was directed at her children. There, the State failed to provide any proof of actual harm to the children. *N.B.*, 191 Ill. 2d at 341-42. The *N.B.* court reversed the neglect finding as against the manifest weight of the evidence. *N.B.*, 191 Ill. 2d at 353-54. The *N.B.* court specifically found the respondent's children were not affected by their mother's outbursts. *N.B.*, 191 Ill. 2d at 351. Here, Mother's behavior seriously impacted the ability of staff to provide the medical care A.L. clearly needed. Further, her lack of cooperation prevented them from obtaining necessary and relevant medical history and information with which to diagnose and treat A. L. All of this caused observable emotional distress to A.L.

¶ 28 Mother argues her erratic behavior was a single incident caused by stress from a combination of her cancer diagnosis, her concern for A.L.'s illness, her own COVID-19 diagnosis, and "likely intoxication." Even accepting this explanation, for the sake of argument, the evidence supporting the neglect adjudication remains. "[T]he only question to be resolved at an adjudicatory hearing is whether or not a child is neglected, and not whether every parent is neglectful." *Arthur H.*, 212 Ill. 2d at 467. If Mother was concerned for A.L.'s health, interfering with the medical staff trying to treat her was not reasonable. While Mother blames her intoxication, Fabiani did not smell alcohol on Mother at the hospital. David H., who testified on Mother's behalf, minimized any concerns regarding respondent's substance abuse issues. Further, Mother's intoxication, if accepted as true, would not change the court's neglect finding.

The court's determination of neglect was not against the manifest weight of the evidence, as the opposite conclusion is not clearly evident. *R.S.*, 382 Ill. App. 3d at 459.

¶ 29                                    B. Unfitness Finding

¶ 30        Mother argues the trial court's unfitness finding was against the manifest weight of the evidence. We will not reverse a trial court's ruling at a dispositional hearing unless it is against the manifest weight of the evidence. *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008). A finding is against the manifest weight of the evidence when the opposite result is clearly evident. *In re Audrey B.*, 2015 IL App (1st) 142909, ¶ 32, 31 N.E.3d 892. Under this standard, a reviewing court will not substitute its judgment for that of the trial court on matters of credibility of witnesses, weight of the evidence, or inferences drawn therefrom. *In re Parentage of W.J.B.*, 2016 IL App (2d) 140361, ¶ 25, 68 N.E.3d 977.

¶ 31        Mother contends the phrase "mental health issues" is too vague to establish an injurious environment for purposes of unfitness. However, the standard for a finding of unfitness at the dispositional stage under the Act is less stringent than the standard for such a finding under the Adoption Act (750 ILCS 50/1(D)(p) (West 2022)) for purposes of terminating parental rights. *In re A.R.*, 2022 IL App (3d) 210346, ¶ 17. Accordingly, the court need only find Mother "unfit" under the ordinary meaning of the term. *A.R.*, 2022 IL App (3d) 210346, ¶ 17. We note most of Mother's arguments directed against the dispositional order are repackaged arguments she used to challenge the neglect adjudication. The trial court is tasked with determining A.L.'s safety, health, and best interests—Mother's arguments do not meaningfully address the court's findings in that regard.

¶ 32        The five exhibits the trial court relied on (People's exhibit Nos. 1 through 5) showed, *inter alia*, this incident was the third time A.L. had been taken into protective custody

by DCFS. A.L. was only five years old at the time of the dispositional hearing. Mother's alcohol use and positive tests for cocaine and alcohol occurred in September 2022, after A.L. was taken into protective custody. Mother also missed several drug screenings. The reports revealed Mother's mental health issues existed before and continued beyond the July 2022 hospital incident. The court specifically discussed Mother's mental health assessment (People's exhibit No. 5) related to anxiety, adjustments to trauma, impulsivity, and hyperactivity. The evidence showed Mother met the criteria for post-traumatic stress disorder, which interfered with her ability to parent. The evidence also called into question Mother's stability and fitness to care for A.L. Based on our review of the record, the court's determination was not against the manifest weight of the evidence, as we cannot say the opposite conclusion is clearly evident. *Audrey B.*, 2015 IL App (1st) 142909, ¶ 32.

¶ 33                                    III. CONCLUSION

¶ 34          For the reasons stated, we affirm the trial court's judgment.

¶ 35          Affirmed.