NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241432-U

NOS. 4-24-1432, 4-24-1433, 4-24-1434 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* E.T., C.M., and R.H., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | Nos. 24JA105 |
| v. | ) | 24JA106 |
| Alyx M., | ) | 24JA107 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | Timothy J. Cusack, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Harris and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's dispositional order
terminating the wardship of the minor was not against the manifest weight of the
evidence.

¶ 2        On October 16, 2024, the trial court found the minors, E.T. (born January 2014),

C.M. (born June 2019), and R.H. (born April 2017), were neglected and respondent, Alyx M.,

the minors' mother, was unfit or unable to care for the minors for reasons other than financial

circumstances alone. C.M.'s father, Brandon D., was found fit. The court terminated the

wardship of C.M. and placed him in the custody of Brandon D. On appeal, respondent only

challenges the trial court's order terminating the wardship of C.M. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4        Because respondent, on appeal, only challenges the trial court's findings

regarding C.M., we recite only the facts relevant to his circumstances.

¶ 5                                    A. Shelter Care Petition

¶ 6            On June 12, 2024, the State filed a shelter care petition pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2022)), alleging C.M. was neglected by respondent because his environment was injurious to his welfare. Specifically, the petition alleged, on May 24, 2024, respondent was the victim of domestic violence from her boyfriend. On the date of the incident, respondent informed officers her boyfriend was trying to "kill" her and had " 'choked her out.' " Respondent recorded the incident, but she placed the phone in her pocket, so only audio from the incident could be heard. According to the petition, the audio corroborated respondent's allegations. Respondent's boyfriend was subsequently arrested and charged with, *inter alia*, aggravated domestic battery.

¶ 7            On May 28, 2024, respondent began communicating to a Pekin police officer her dissatisfaction with the events from May 24. Respondent denied stating she had been strangled and "disagreed" her boyfriend should have been charged with a crime. On May 30, 2024, respondent appeared at her boyfriend's detention hearing. Respondent told the trial court she wanted her boyfriend's case dismissed, she was not afraid of him, and she did not want the court-ordered "no contact" provision.

¶ 8            The petition notes respondent's boyfriend's criminal history included multiple prior domestic battery convictions. The petition further alleged prior incidents from 2015, 2018, and 2022, where respondent had been the victim of domestic violence. The trial court granted the State's petition and placed C.M., along with the other minors, in the temporary custody of the Illinois Department of Children and Family Services (DCFS).

¶ 9            Respondent filed an answer to the State's petition, neither admitting nor denying

the State's allegations but stipulating the State could prove the allegations. The matter proceeded to an adjudicatory and dispositional hearing on October 16, 2024.

¶ 10                                    B. Adjudicatory and Dispositional Hearings

¶ 11            At the adjudicatory hearing, the State offered into evidence the "narrative portion of the [shelter care] petition" and proffered a witness who could testify to the accuracy of its contents. The trial court admitted the exhibit into evidence without objection. The court asked if the parties had any other evidence. Respondent offered no evidence. The court stated:

> "Based upon the answers that have been received, State's proffer, taking
> into consideration all statutory and nonstatutory factors, I'll find the State
> has met their burden of proof by clear and convincing evidence. Will
> adjudicate."

¶ 12            The matter proceeded to a dispositional hearing. The trial court confirmed with caseworker, Lora Thompson, there were no corrections to the dispositional hearing report she had prepared in September 2024. The dispositional hearing report showed the following. Respondent's home was clean but lacked a smoke detector. Respondent had been employed full-time. She did not consistently cooperate with DCFS, canceling meetings or visits with her children and leaving "lengthy hostile text message, and[/]or emails." She had failed to submit to drug testing. And, when she attended visits with the minors they were documented as appropriate interactions.

¶ 13            Regarding Brandon D., the report stated:

> "[Brandon D.] is capable of parenting as is evident due to the fact he had
> full custody of 9 year old [I.D.] prior to [C.M.] coming into care. [Brandon
> D.] has cooperated, and stepped up to assist with [C.M.'s] care. [Brandon

D.] appears to be a nurturing, compassionate, and tolerant father. There does not appear to be any barriers, or reasons why [Brandon D.] should not be given opportunity to provide permanency and stability to his son [C.M.]"

¶ 14 The report noted C.M.'s "difficulties with self-regulation" had "dissipated" under the care of his "paternal grandmother." C.M. was "now benefiting from the attentive care given to him by both his grandmother, and his father." Additionally, the report indicated C.M. would continue to benefit from the stability of his current placement, "especially if [Brandon D.] is allowed to return to the home and reside with both his children."

¶ 15 Counsel for Brandon D. questioned Thompson at the hearing about whether family therapy had originally been recommended for Brandon D. and C.M. Thompson stated the therapy was no longer recommended because C.M. was "doing well in the home and [Brandon D. was] an appropriate parent." Thompson believed Brandon D. met the minimum parenting standards. Brandon D. visited with C.M. daily and was very engaged in his needs. Thompson did not have any concerns regarding Brandon D.'s ability to protect C.M. and found him to be a fit parent. Thompson noted Brandon D. also had another child in his home from a previous relationship.

¶ 16 Respondent's counsel proffered to the trial court respondent "saw the initial warning signs" regarding the May 2024 domestic violence incident and "removed the children from the home when she saw those signs." Respondent then returned to the home and began recording her boyfriend's conduct until the circumstances escalated and she called the police. Additionally, respondent had an appointment to get an "ID" for drug testing, was scheduled for "an assessment" later that week, was in counseling, and "continue[d] to do well with the

services."

¶ 17       The trial court found Brandon D. to be a fit parent. The court stated, "I don't see any reason why [C.M.] can't be returned to his care. That case is being closed today." Regarding respondent, the court noted "multiple incidents of domestic violence." The court questioned "whether the [minors] can be kept from domestic violence situations in the future. And at this point in time the allegations contained in the petition have been adjudicated." The court found respondent unfit to care for the minors for reasons other than financial circumstances.

¶ 18       This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20       Pursuant to the Act, there is a two-stage process the trial court must follow prior to making a neglected minor a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18. First, the court must determine, by a preponderance of the evidence, whether the minor is neglected. *Id.* ¶ 19. If the court finds the minor is neglected, the court "determines whether it is consistent with the health, safety and best interests of the minor and the public that the minor be made a ward of the court." *Id.* ¶ 21.

¶ 21       On appeal, respondent only challenges the trial court's fitness finding as it pertains to C.M. at the dispositional hearing. Respondent contends (1) the court's written order did not contain sufficient factual findings to comply with the Act and (2) the court's dispositional order did not sufficiently consider the best interest factors as defined by the Act. We address each in turn.

¶ 22       We will not reverse a trial court's ruling at a dispositional hearing unless it is against the manifest weight of the evidence. *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008). A finding is against the manifest weight of the evidence when the opposite result is clearly evident.

*In re Audrey B.*, 2015 IL App (1st) 142909, ¶ 32. Under this standard, a reviewing court will not substitute its judgment for that of the trial court on matters of the credibility of witnesses, the weight of the evidence, or the inferences to be drawn therefrom. *In re Parentage of W.J.B.*, 2016 IL App (2d) 140361, ¶ 25.

¶ 23 Respondent first argues the trial court's written order did not contain any written factual findings regarding the health and safety of C.M. or whether terminating its wardship over C.M. was consistent with his health, safety, and best interest or that of the public's interest, as required by section 2-31(2) of the Act. See 705 ILCS 405/2-31(2) (West 2022).

¶ 24 The relevant part of the Act states:

"Whenever the court determines, and makes written factual findings, that health, safety, and the best interests of the minor and public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged." *Id.*

¶ 25 The State first argues respondent failed to raise these arguments during or after the dispositional hearing and, thus, forfeited her arguments on appeal. The State does not elaborate on this argument and merely cites *People v. Pettis*, 2016 IL App (4th) 140469, ¶ 25, which involved a motion to suppress in a criminal matter. The State's argument is not persuasive. First, proceedings under the Act "are civil, not criminal, actions." *In re J.J.*, 142 Ill. 2d 1, 8 (1991). Second, the State fails to explain how respondent forfeited these arguments procedurally. See *In re D.D.*, 212 Ill. 2d 410, 418 (2004) ("Dispositional orders from juvenile court are generally final and appealable."). Accordingly, we are unpersuaded by the State's argument and do not find respondent has forfeited her arguments on appeal.

¶ 26        In response to the merits of respondent's first claim, the State argues the trial court's oral pronouncements were sufficient to comply with the Act. The State cites *In re Madison H.*, 215 Ill. 2d 364 (2005), in support.

¶ 27        A trial court's oral finding may satisfy the written requirements under the Act where the court's findings are "explicit and advise[ ] the parties of the basis for the court's decision." *Id.* at 377. Here, the court was explicit that respondent's history regarding domestic violence and her inability to protect her children from exposure to domestic violence were the primary bases for its determination. Additionally, the court concluded Brandon D. was an appropriate placement for C.M. Therefore, we find the court's order explicitly provided the parties with the basis for its decision and, thus, complied with the requirements of section 2-31(2) of the Act.

¶ 28        Respondent next argues the trial court failed to adequately consider the best interest factors, as listed in section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) (West 2022)), which states:

> "Whenever a 'best interest' determination is required, the following factors shall be considered in the context of the child's age and developmental needs:
>
>> (a) the physical safety and welfare of the child, including food, shelter, health, and clothing;
>>
>> (b) the development of the child's identity;
>>
>> (c) the child's background and ties, including, familial, cultural, and religious;
>>
>> (d) the child's sense of attachments, including:
>>
>>> (i) where the child actually feels love, attachment, and a

sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's needs for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child."

¶ 29     Specifically, respondent contends the trial court's decision did not mention most of the best interest factors. There was no discussion of C.M.'s schooling, friends, or bond with respondent. There was no mention of C.M.'s ties to his siblings, who were made wards of the court, C.M.'s attention-deficit/hyperactivity disorder, or DCFS's recommendation that C.M. be made a ward of the court and DCFS be named as his guardian. Lastly, she claims, the dispositional report raised concerns about C.M.'s bond with Brandon D.

¶ 30     The State argues the trial court is not required to cite every best interest factor in its determination. Additionally, the State claims the evidence shows the court's decision was not

against the manifest weight of the evidence. We agree.

¶ 31     While the best interest factors from section 1-3(4.05) "must be considered, no single factor is dispositive." *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 31. "In addition, the trial court's best-interests determination need not contain an explicit reference to each of these factors, and we need not rely on any basis relied upon by the trial court in affirming its decision." *Id.* We also note the standard for a finding of unfitness at the dispositional stage under the Act is less stringent than the standard for such a finding the under the Adoption Act (see 750 ILCS 50/1(D) (West 2022)) for purposes of terminating parental rights. *In re A.R.*, 2022 IL App (3d) 210346, ¶ 17. Accordingly, the court need only find respondent "unfit" under the ordinary meaning of the term. *Id.*

¶ 32     The uncontroverted evidence showed respondent continued to struggle with incidents of domestic violence at the hands of her boyfriend. While respondent attempted to recant allegations of domestic violence—allegations corroborated by an audio recording—from the most recent incident in May 2024, she went further by attending her boyfriend's court proceedings to request the charges be dismissed. The dispositional report showed respondent maintained stable housing and employment but failed to submit to court-ordered drug testing or cooperate with DCFS. These findings are sufficient to conclude respondent was unfit.

¶ 33     We are unpersuaded by respondent's arguments the trial court failed to sufficiently consider the best interest factors. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (noting the appellant bears the burden of persuasion as to his or her claims of error). The evidence showed C.M. had improved upon being placed with Brandon D.'s mother and would continue to improve under Brandon D.'s care. The dispositional hearing report also showed Brandon D. had demonstrated the parenting skills

necessary to meet C.M.'s needs. At the dispositional hearing, Thompson opined further that Brandon D. was capable of caring for C.M. Based on our review of the record, the court's determination was not against the manifest weight of the evidence, as we cannot say the opposite conclusion is clearly evident. *Audrey B.*, 2015 IL App (1st) 142909, ¶ 32.

¶ 34                                    III. CONCLUSION

¶ 35            For the reasons stated, we affirm the trial court's judgment.

¶ 36            Affirmed.