2025 IL App (2d) 250056-U
No. 2-25-0056
Order filed November 4, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* J.H.S., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | |
| | ) | |
| | ) | No. 20-JA-137 |
| | ) | |
| | ) | Honorable |
| (People of the State of Illinois, Petitioner- | ) | Kathryn D. Karayannis, |
| Appellee v. Tarah H., Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Issue of findings made in a temporary custody hearing was moot, as there was a subsequent adjudication of wardship supported by adequate evidence; (2) plenary order of protection was a final and appealable order and should have been appealed within 30 days of its issuance; (3) it is the duty of a guardian *ad litem*, not the parent, to call the rights of the minor to the attention of the court; (4) failure to adequately contest all grounds upon which a finding of unfitness was based renders the issue of unfitness moot; and (5) appellate court cannot find best interests determination to be against the manifest weight of the evidence where appellant fails to properly and adequately brief the issue.

¶ 2    Respondent, Tarah H. appeals from the trial court's orders finding her to be an unfit parent and that it was in the best interests of her son, J.H.S., that her parental rights be terminated. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In August 2020, the State filed a petition alleging that J.H.S. was a neglected minor in that: (1) J.H.S. was "born with cocaine in his urine, blood or m[e]conium which is not result of medical treatment administered to the mother or the infant" (705 ILCS 405/2-3(1)(C) (2) (West 2018)); (2) his environment was injurious to his welfare in that defendant's substance abuse issues and/or history placed the minor at risk of harm, and his father, Robert Scholl,[1] failed to protect and/or care for him (705 ILCS 405/2-3(1)(b) (West 2018)); and (3) his environment was injurious to his welfare in that Scholl's domestic violence issues and/or history placed him at risk of harm, and defendant failed to protect and/or care for him (705 ILCS 405/2-3(1)(b) (West 2018)). At an August 27, 2020, shelter care hearing, the trial court found that probable cause for the filing of the petition existed based on Tarah's knowing and voluntary stipulation that State's witnesses would testify that J.H.S.'s urine tested positive for cocaine and that his umbilical cord tested positive for benzodiazepine. Tarah had tested positive for cocaine on July 1, 2020, and she and Robert had lived together throughout pregnancy. Further, Tarah's parental rights to J.H.S.'s sibling were terminated in April 2019, after Robert attempted to push Tarah out of a vehicle on I-90 while the sibling was in the back seat.

¶ 5    The court found immediate and urgent necessity to remove J.H.S. from the home and that reasonable efforts could not prevent or eliminate the necessity for removal; therefore, the court granted temporary custody of J.H.S. to the Illinois Department of Children and Family Services

[1] Robert has filed a separate appeal in case no. 2-25-0026.

(DCFS), which was authorized to place J.H.S. Tarah and Robert were admonished that they must cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that required J.H.S. to be in care or risk termination of their parental rights. CASA Kane County was appointed Guardian *ad litem* (GAL) for J.H.S., and attorneys were appointed for the GAL.

¶ 6     Following a hearing on the State's petition, the court, on November 6, 2020, found J.H.S. abused or neglected as defined by 705 ILCS 405/2-3 in that, as a newborn, he was exposed to illicit drugs. The finding was based again on Tarah and Robert's "knowing and voluntary stipulation" that the State's evidence would include that J.H.S. tested positive for a controlled substance, cocaine, and his umbilical cord tested positive for a benzodiazepine, not as the result of any medical treatment. Tarah tested positive for cocaine on or about July 1, 2020, and Tarah and Robert lived together throughout the pregnancy. The terms and conditions concerning the temporary custody of J.H.S. remained in place, and Tarah and Robert were again admonished that they risked termination of their parental rights if they did not cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that required J.H.S. to be in care.

¶ 7     On December 4, 2020, the trial court entered a dispositional order finding that it was "consistent with the health, welfare and safety of the minor and in the best interest of the minor to make the minor a ward of the Court." Tarah was found unfit, for reasons other than financial circumstances alone, "to care for, protect, train, educate, supervise or discipline the minor and placement with her is contrary to the health, safety and best interests of the minor" because Tarah had stipulated "that services have been identified for her to complete." Those services included domestic violence victim services, substance abuse evaluation, compliance with recommendations, maintaining sobriety, submitting to random drops, individual therapy, psychiatric treatment and medication compliance, couples counseling, parenting classes and

coaching. Reasonable efforts and appropriate services aimed at reunifying the family could not prevent or eliminate the necessity for removal of J.H.S. from the home. Guardianship and custody of J.H.S. was with DCFS with the right to place him. The court set a permanency goal of return home within 12 months. Tarah was again admonished that she must cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that required J.H.S.to be in care or she would risk termination of her parental rights.

¶ 8     On December 21, 2022, the State filed petitions to terminate the parental rights of both Tarah and Robert. The State alleged that Tarah was an unfit person to have a child in that she: (1) failed to maintain reasonable degree of interest, concern or responsibility as to J.H.S.'s welfare under 750 ILCS 50/1 (D)(b); (2) failed to protect J.H.S. from conditions within his environment that were injurious to his welfare under 750 ILCS 50/1(D)(g); (3) failed to make reasonable efforts to correct the conditions that were the basis for the removal of J.H.S. from Tarah during the nine-month period between January 19, 2022, and October 19, 2022, after an adjudication of neglect under 750 ILCS 50/1(D)(m)(i); and (4) failed to make reasonable progress toward the return of J.H.S. during the same nine-month period under 750 ILCS 50/1(D)(m)(ii).

¶ 9     The hearing on the unfitness portion of the termination petition began on July 8, 2024, and was held on four subsequent days, ending on July 15, 2024. The record on appeal does not contain transcripts from any of the days of the unfitness hearing. On July 15, the trial court found that Tarah was not in court on time and terminated her case for her failure to appear. After hearing argument, the court took a break, during which Tarah finally appeared. After retaking the bench, the court found by clear and convincing evidence that the State had proven Tarah's unfitness on all four bases alleged.[2]

---

[2] Robert was also found unfit under four of the five bases alleged against him.

¶ 10    The best interests portion of the termination proceedings was held over six days between July 26, 2024 and October 31, 2024. The only transcript contained in the record on appeal is from September 27, 2024. On October 31, the trial court found that it was in the best interests of J.H.S. that the parental rights of Tarah and Robert be permanently terminated. Tarah filed a motion to reconsider. The trial court struck that motion on December 30, 2024. In its order, the court found that Tarah and Robert "appeared via [Z]oom from a moving vehicle at 9:17 am and are removed from the platform. They have been repeatedly ordered to appear in person and on time. The matter was set at 9:15am." The court also found that "[Tarah] has filed a motion to reconsider. She has failed to notice it and failed to appear in person and in a timely manner. [Tarah's] motion to reconsider is stricken for failure to prosecute." The clerks minute order noted: "Both parents appearing on [Z]oom together while driving. Both parents ordered to appear in person. Court denies the admittance of parents on [Z]oom." The report of proceedings for this date does not appear in the record of appeal of this case or Robert's separate appeal. This court granted Tarah leave to file a late notice of appeal, and this appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    As noted above, Tarah failed to file all but one day of transcripts from the court proceedings. In her reply brief, she avers that she was "denied the ability to obtain the trial transcripts necessary to prepare a complete brief" because "the trial court never ruled on her application for a fee waiver, effectively barring her access to the record."[3] Further, "[i]t was only

---

[3] Tarah does not provide a citation to the pages of the common law record where this reputed application is shown, and our examination of the record reveals no such application. Robert made such an application, which appears in the common law record of his separate

after [Robert's] counsel received the transcripts for his separate appeal that Appellant was able to review the full record." Supreme Court Rule 323 (eff. Oct. 1, 2021) requires the record on appeal to include "any report of proceedings prepared in accordance with Rule 323." In turn, Rule 323 (eff. July 1, 2017) requires the report of proceedings to "include all the evidence pertinent to the issues on appeal." "The appellant has the duty to supply a sufficient record for review, and any doubts arising from the incompleteness of the record will be resolved against the appellant." *People v. Johnson*, 285 Ill.App.3d 307, 308 (1996).

¶ 13     We also note that Tarah has, in the vast majority of instances, violated Supreme Court Rule 341(h)(6) and (7) (eff. Oct. 1, 2020), which require citation or reference to the pages of the record relied upon in both the appellant's statement of facts and argument. Even after noting her late access to the record on appeal in her reply brief, Tarah never once cites to the transcripts in that brief. Tarah points out her status as "an indigent, pro se litigant." However, "*pro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys." *In re Estate of Pellico*, 394 Ill.App.3d 1052, 1067 (2009). This court is not a repository into which the appellant can dump the burden of research. *County of McHenry v. Thoma*, 317 Ill.App.3d 892 (2000). To the extent that Tarah's references to the record can be easily interpreted, we may access the cited documents. However, it is not the obligation of this court to act as an advocate or seek error in the record. See *U.S. Bank v. Lindsey*, 397 Ill.App.3d 437, 459 (2009).

¶ 14     We also note that, near the end of her brief, Tarah provides a list of "Motions Filed and Preserved for Review," stating that such motions "were timely filed and must be considered part

---

appeal.

of the appellate record, as they directly relate to the issues on appeal and reflect Appellant's due diligence, procedural fairness requests, and substantive legal objections." This section of the brief does not seek any relief. To the extent that these motions are contained in the common law record and are germane to any properly-raised issue, they will be appropriately considered.

¶ 15 Tarah first contends that the trial court erred granting temporary custody of J.H.S. to DCFS after the August 27, 2020, shelter care hearing. However, in general, an appeal of findings made in a temporary custody hearing is moot where there is a subsequent adjudication of wardship supported by adequate evidence. *In re Edward T.*, 343 Ill. App. 3d 778, 792 (2003). At the shelter care hearing, the trial court found that probable cause for the filing of the petition existed based on Tarah's knowing and voluntary stipulation that State's witnesses would testify that J.H.S.'s urine tested positive for cocaine and that his umbilical cord tested positive for benzodiazepine. That stipulation also was the basis for the court's finding that J.H.S. was a neglected minor. Another stipulation by Tarah formed the basis for the court's finding that it was in J.H.S.'s best interest to be made a ward of the court. The court's adjudication of wardship was supported by adequate evidence, thereby rendering Tarah's appeal of the temporary custody hearing moot. We also note that, in the absence of any transcript from the hearing, we cannot find the court's findings to be unsupported by adequate evidence.

¶ 16 Tarah next contends that the trial court erred in issuing an order of protection against her. An order of protection prohibiting Tarah and Robert from having any contact whatsoever with J.H.S., his foster parents, or their child was entered on July 12, 2024, in the instant case (2020 JA 137) and entered into LEADS. On July 15, 2024, the trial court issued another emergency order of protection protecting J.H.S, his foster parents, their child, and their home from any contact from Tarah and Robert and ordered that it "be entered in a separate OP case so that it can be entered

into LEADS." On July 26, 2024, after a hearing, the trial court issued a two-year plenary order of protection against both Tarah and Robert. On August 20, 2024, Robert filed a notice of appeal in 2020 JA 137; he withdrew that notice on August 23 and filed a notice of appeal "on OP case." The trial court's order of August 26, 2024, notes, "Notice of appeal of order of protection filed on behalf of father in 2024OP2091." Tarah was given her copy of the plenary order that day.

¶ 17    A plenary order of protection has been held to be a final and appealable order. *Martinez v. Leon*, 2024 IL App (1st) 231058, ¶ 15. In general, a notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Here, the trial court entered its final order granting the plenary order of protection on July 26, 2024. Appeal from that order should have been taken by August 26, 2024. As no attempt at appeal was taken until February 19, 2025, we have no jurisdiction over issues pertaining to the order of protection.

¶ 18    Tarah raises several issues specific to J.H.S.'s care and rights: DCFS failed to protect J.H.S. from harm while he was in substitute care; the Public Guardian improperly filed a motion to withdraw from the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967); J.H.S. was placed in an unsafe, emotionally harmful environment during the course of the court proceedings. However, Tarah is not the appropriate person to raise such issues.

¶ 19    At the August 27, 2020, shelter care hearing, CASA Kane County was appointed GAL for J.H.S., and attorneys were appointed for the GAL. As the representative of a minor, a guardian *ad litem* is a party to the action. *In re Griesmeyer*, 302 Ill. App. 3d 905, 913-14 (1998). It is the duty of a guardian *ad litem* to call the rights of the minor to the attention of the court, to present their interests and claim for them such protection as under the law they are entitled. *Id*. at 914. "The

imperative and guiding principal by which a guardian *ad litem* operates is to act in the best interests of the minor." *Id.*

¶ 20    Here, J.H.S. was represented by the GAL and appointed attorneys. The GAL, not Tarah, was the appropriate party to protect the interests of J.H.S. As Tarah is not the appropriate party to raise such issues here, we will not consider them.

¶ 21    Tarah next contends that the trial court's findings that she was an unfit parent based on her failure to make reasonable efforts to correct the conditions that were the basis for the removal of J.H.S. and to make reasonable progress toward the return of J.H.S. were against the manifest weight of the evidence. A reviewing court should affirm a trial court's finding of unfitness if any ground on which the court found the respondent unfit is sustainable. *In re J.O.*, 2021 IL App (3d) 210248, ¶ 33. Further, we need not address every basis on which the court found respondent unfit to affirm the finding of unfitness.

¶ 22    Here, the trial court found Tarah unfit on four grounds: those contested by Tarah, along with failure to maintain reasonable degree of interest, concern or responsibility as to J.H.S.'s welfare and failure to protect J.H.S. from conditions within his environment that were injurious to his welfare. Tarah never addressed failure to maintain reasonable degree of interest or failure to protect in her initial brief, and in addressing them for the first time in her reply brief, allocated a total of three paragraphs, none of which contains any citation to the record. The failure to properly and adequately contest these other grounds upon which the finding of unfitness was based renders this issue moot. See *In re D.L.*, 191 Ill.2d 1, 8 (2000); see also *In re V.S.*, 2025 IL 129755, ¶ 59 (analyzing the holding in *D.L.*, which "found that her appeal was moot because of her failure to challenge the other grounds" of unfitness, applying it to a failure to contest a dependency finding that would remain in effect even if a contested neglect finding were reversed, and overruling "those

appellate court cases holding that a respondent may appeal only one of multiple findings" where a circuit court makes more than one finding that a minor is abused, neglected, or dependent). As the issue of the finding of unfitness is moot, we will not address it.

¶ 23    Tarah finally contends that the trial court's finding that it was in J.H.S.'s best interests that Tarah's parental rights be terminated was against the manifest weight of the evidence. We first note that Tarah raises this issue for the first time in her reply brief. Issues and arguments that are raised for the first time in a reply brief are forfeited unless they are responsive to arguments on the issue of waiver. In re *A.R.*, 2022 IL App (3d) 210346, ¶ 22; see also Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which provides that "[p]oints not argued [in the appellant's brief] are waived and shall not be raised in the reply brief." Beyond this, Tarah devoted only three paragraphs to this issue, never once citing to the record on appeal.

¶ 24    Termination of parental rights is a drastic measure. *In re Gwynne P.*, 215 Ill.2d 340, 353 (2005). We must review the facts of a termination of parental rights case with close scrutiny. *In re S.W.*, 315 Ill.App.3d 1153, 1157 (2000). However, a trial court is in the best position to view and evaluate the parties, its decision regarding termination is entitled to great deference. See I*n re N.T.*, 2015 IL App (1st) 142391, ¶ 27. We cannot overturn a trial court's determination that a child's best interests are served by terminating a parent's rights when the parent makes no effort to direct this court's attention to specific evidence and testimony that would lead us to conclude that the trial court's decision was against the manifest weight of the evidence. Therefore, we cannot find error here.

¶ 25    This is an accelerated appeal under Supreme Court Rule 311(a), which requires this court to issue our decision within 150 days after the filing of the notice of appeal unless good cause has been shown for the delay. See Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, Tarah filed her

late notice of appeal on February 19, 2025, and our disposition was due to be filed by July 19, 2025. This deadline has passed.

¶ 26    This court, in an effort to accommodate Tarah's *pro se* status to a reasonable extent, granted her multiple extensions of time to file her initial brief. However, we were required to issue, on our own motion, an overdue brief notice before Tarah filed her appellant's brief on July 3, 2025. Because of these extensions and delay, full briefing was not completed until August 5, 2025, beyond the 150-day requirement. Even after filing her initial brief, Tarah twice sought leave to file supplemental briefs, once after the case had been submitted for decision. Given the foregoing, we find good cause for issuing our decision after the 150-day deadline.

¶ 27                          III. CONCLUSION

¶ 28    For these reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 29    Affirmed.